**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

SOLMETEX, LLC,

               Plaintiff,

    v.

ASCENTCARE DENTAL PRODUCTS,
INC.,

               Defendant.

No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Solmetex, LLC ("Plaintiff" or "Solmetex") as and for its Complaint against Ascentcare

Dental Products, Inc. ("Defendant" or "Ascentcare"), states and alleges as follows:

### THE PARTIES

1.    Solmetex is a limited liability company existing and organized under the laws of

Delaware with its principal place of business at 4 Mount Royal Avenue, Suite 200, Marlborough,

Massachusetts 01752.

2.    Ascentcare is a corporation existing and organized under the laws of Michigan and

has a place of business at 335 North Griffin Street, Grand Haven, Michigan 49417.

### NATURE AND BASIS OF ACTION

3.    This Action for damages and injunctive relief arises under the Patent Laws of the

United States, Title 35 of the United States Code, the Lanham Act, Title 15 of the United States

Code, and the Michigan Deceptive Trade Practices Act, X MI. X. § 445.903 *et seq.*

### JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action under

28 U.S.C. §§ 1331, 1338, and 1367 because Solmetex seeks relief for Ascentcare's infringement

1

of Solmetex's patents, Ascentcare's false and misleading advertising under the Lanham Act, and relief for Ascentcare's violations of Michigan state law.

5.      This Court has personal jurisdiction over Ascentcare under the United States Constitution and the State Laws of Michigan because Ascentcare is a Michigan corporation and because Ascentcare conducts, and has conducted, continuous, systematic, substantial, and routine business within Michigan, including, but not limited to, offering products and services for sale in Michigan.

6.      Venue in this Court is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because Ascentcare is a Michigan corporation with its principal place of business in this District.

## BACKGROUND

7.      Solmetex provides dental isolation systems under the DryShield® brand of products, including dental isolation mouthpieces.

8.      Solmetex's DryShield® mouthpiece is designed to fit in the patient's mouth while a dental clinician is performing a procedure on the patient.  The DryShield® mouthpiece allows comfortable and efficient suctioning within the patient's mouth to remove saliva, water, and dental debris to keep the working area visible and dry.  Solmetex's DryShield® mouthpiece is connected to the Solmetex's DryShield® isolation system, which suctions the air through the mouthpiece.

9.      An image of Solmetex's DryShield® mouthpiece by itself is shown below on the left.  An image of Solmetex's DryShield® mouthpiece connected to the DryShield® isolation system is shown on the right while positioned in the patient's mouth.




10.    The DryShield® mouthpiece is covered by several U.S. patents owned by Solmetex, which are described in more detail below.

11.    The DryShield® brand of products, including the DryShield® mouthpiece, has been commercially available in the United States since at least 2015.

<u>**THE SOLMETEX PATENTS**</u>

12.    Solmetex asserts nine patents in this Complaint for patent infringement: U.S. Patent Nos. 11,589,969, 11,589,970, 11,744,686, 11,826,217, and 12,011,329 and U.S. Design Patent Nos. D962,438, D962,439, D988,505, and D1,037,436 (collectively, the "Solmetex Patents").

13.    Solmetex is presently the owner of the entire right, title, and interest in and to each of the Solmetex Patents and has the exclusive right to sue for and recover all past, present, and future damages for infringement of the Solmetex Patents.

14.    Each of the Solmetex Patents is currently in full force and effect.

15.    On February 28, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,589,969 ("the '969 Patent"), entitled "Intraoral Device With Mesh."  A true and correct copy of the '969 Patent is attached hereto as Exhibit A.

16.     On February 28, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,589,970 ("the '970 Patent"), entitled "Intraoral Device With Detachable Mouth Prop."  A true and correct copy of the '970 Patent is attached hereto as Exhibit B.

17.     On September 5, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,744,686 ("the '686 Patent"), entitled "Intraoral Device."  A true and correct copy of the '686 Patent is attached hereto as Exhibit C.

18.     On November 28, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,826,217 ("the '217 Patent"), entitled "Dental Mouthpiece."  A true and correct copy of the '217 Patent is attached hereto as Exhibit D.

19.     On June 18, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,011,329 ("the '329 Patent"), entitled "Intraoral Device."  A true and correct copy of the '329 Patent is attached hereto as Exhibit E.

20.     On August 30, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Design Patent No. D962,438 ("the '438 Design Patent"), entitled "Mouthpiece." A true and correct copy of the '438 Design Patent is attached hereto as Exhibit F.

21.     On August 30, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Design Patent No. D962,439 ("the '439 Design Patent"), entitled "Mouthpiece."  A true and correct copy of the '439 Design Patent is attached hereto as Exhibit G.

22.     On June 6, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Design Patent No. D988,505 ("the '505 Design Patent"), entitled "Mouthpiece."  A true and correct copy of the '505 Design Patent is attached hereto as Exhibit H.

23.     On July 30, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Design Patent No. D1,037,436 ("the '436 Design Patent"), entitled "Mouthpiece."  A true and correct copy of the '436 Design Patent is attached hereto as Exhibit I.

## ASCENTCARE HAS BEEN ON NOTICE OF ITS INFRINGEMENT OF THE SOLMETEX PATENTS

24.     In approximately late 2020 or early 2021, Ascentcare began to market and sell its VacuLUX mouthpieces.  Ascentcare currently makes, uses, sells, and/or offers to sell in the United States (including Michigan) its VacuLUX mouthpieces.

25.     Ascentcare's VacuLUX mouthpieces directly compete with Solmetex's DryShield® mouthpieces.  Ascentcare markets the VacuLUX mouthpieces to consumers as being engineered for compatibility with Solmetex's DryShield® isolation system.  An image of the VacuLUX mouthpiece taken from Ascentcare's website in September 2024 is shown below.



26.     On May 17, 2023, counsel for Solmetex sent a letter addressed to Ascentcare's founder and CEO, Austin Ritter, regarding "Notice of Infringement of U.S. Patent Nos. 11,589,969, 11,589,970, D962,438, D962,439" ("the Notice Letter"). A true and correct copy of the Notice Letter and its attachments is attached hereto as Exhibit J.

27.     In the Notice Letter, Solmetex informed Ascentcare that it was "the sole owner of all rights and title to U.S. Patent Nos. 11,589,969 ("the '696 patent"), 11,589,970 ("the '970

patent"), D962,438 ("the '438 patent"), and D962,439 ("the '439 patent")" and attached copies of the Solmetex Patents.

28.     The Notice Letter also attached claim charts exemplifying Ascentcare's infringement of the Solmetex Patents.

29.     The Notice Letter further provided that "Ascentcare is now on notice of Solmetex's patent rights and the manner of Ascentcare's infringement of the same. Any further making, using, selling, offering to sell, and/or importing of the Unauthorized Products will be deemed to constitute willful infringement."

30.     The Notice Letter requested that Ascentcare (1) "Cease and desist all making, using selling or offering to sell, and importing the Unauthorized Products, and any other infringing products in all channels, including through Ascentcare's website, within the United States" and (2) "Provide an accounting of all sales, offers to sell, uses, installations or other transactions in order to understand the quantum of customers, uses, revenue or proceeds associated with the Unauthorized Products in the United States."

31.     Since the May 17, 2023, there have been several oral and written communications between Solmetex's counsel and Ascentcare's counsel regarding this dispute.   In those communications, Ascentcare was informed of other patents within the nine Solmetex Patents that were issued by the United States Patent and Trademark Office after the May 17, 2023 Notice Letter.

32.     In a written communication dated August 8, 2024, Ascentcare's counsel indicated that Ascentcare had altered the design of the original VacuLUX mouthpiece and had stopped selling the original VacuLUX mouthpiece.

33.     On information and belief, the altered "new" design of the VacuLUX mouthpiece referred to in the written communication dated August 8, 2024 from Ascentcare's counsel is shown in the image below, which was taken from Ascentcare's website in September 2024.



34.     The altered "new" design of the VacuLUX mouthpiece shown in the image above in Paragraph 33 and the original VacuLUX mouthpiece shown in the image above from Paragraph 25 are collectively referred to herein as the "Accused Products."

### ASCENTCARE'S FALSE AND MISLEADING ADVERTISING

35.     Ascentcare promotes the Accused Products by making false and misleading claims in its marketing materials and advertisements. Ascentcare's false and misleading advertisements are promoted at least on Ascentcare's website, which is accessible by consumers nationwide, including in Michigan.

36.     On information and belief, Ascentcare is making false and misleading claims about the Accused Products in an effort to legitimize its Accused Products with inaccurate comparisons to Solmetex's DryShield® mouthpiece to divert sales from Solmetex to Ascentcare.

### Ascentcare's Misleading Comparisons Regarding Cost

37.     On  one  its  webpages  (https://www.ascentcaredental.com/product/assorted-autoclavable-vaculux-mouthpiece-4-pack),  Ascentcare  states  the  following  about  the  Accused Products,  "Autoclavable:  Approximately  50  cycles  per  mouthpiece."   Being  autoclavable  for approximately 50 cycles means that each Accused Product can be used (reused) approximately 50 times.

38.     In  Ascentcare's  article  entitled  "Make  Your  Autoclavable  Mouthpieces  Last" (https://www.Ascentcaredental.com/post/make-your-autoclavable-mouthpieces-last),  Ascentcare explains to potential consumers that "We recommend replacing mouthpieces when they begin to yellow and soften, typically after 50 uses."

39.     However, in that same article, Ascentcare further explains that "With proper care, your mouthpieces can last even longer!" and provides a list of six recommended actions that purportedly allow mouthpieces to last longer, including (i) rinsing the mouthpiece right away after use, (ii) brushing the mouthpiece well after use, (iii) using a clean autoclave, (iv) checking the autoclave water to ensure it is pure distilled water, (v) using correct temperature settings in the autoclave, and (vi) avoiding certain chemicals to sterilize the mouthpieces.  None of these six recommended actions that purportedly allow mouthpieces to last longer relate to the physical characteristics of the Accused Products.  According to this same article, the Accused Product "will last **up to 100 uses**, especially when cared for properly" instead of the recommended replacement after 50 uses.

40.     In a separate publication when Ascentcare directly compares the Accused Products with Solmetex's DryShield® mouthpieces (https://www.Ascentcaredental.com/compare/vaculux-vs-dryshield), Ascentcare informs consumers that, when the Accused Products are autoclaved 100 times, the "Cost Per Use" of the Accused Products is "Only 25¢  per  use  with  easy-to-clean

autoclavable mouthpieces." Ascentcare then states that Solmetex's DryShield® mouthpieces have a "Cost Per Use" of 53¢ per use.

41.      In making this "Cost Per Use" comparison, Ascentcare deceptively fails to inform consumers that (i) Ascentcare actually recommends replacing mouthpieces "after 50 uses" and (ii) the maximum number of uses of the Accused Product is 100 uses because "**up to 100** uses" can purportedly be achieved only if the consumer follows Ascentcare's six recommended actions for cleaning the mouthpiece after use and properly using the autoclave device, as explained in its article "Make Your Autoclavable Mouthpieces Last" that is described above.

42.      On information and belief, Ascentcare has never attempted to autoclave Solmetex's DryShield® mouthpieces for 100 times following Ascentcare's six recommended actions for cleaning the mouthpiece and properly using the autoclave device to determine if Solmetex's DryShield® mouthpieces performs the same as the Accused Products.

43.      Had Ascentcare properly compared the products using its own recommended replacement of the Accused Products "after 50 uses," then the "Cost Per Use" of the Accused Products would be 50¢ -- not 25¢ as Ascentcare's comparison states.  As such, Ascentcare's comparison of the Accused Products to Solmetex's DryShield® mouthpieces on the basis of "Cost Per Use" is purposefully deceptive and misleading.

**Ascentcare's False and Misleading Statements Regarding Compatibility**

44.      In the publication when Ascentcare directly compares the Accused Products with Solmetex's DryShield® mouthpieces (https://www.Ascentcaredental.com/compare/vaculux-vs-dryshield), Ascentcare claims that the Accused Products fit VacuLUX, Isolite and Dryshield® isolation systems.

9



45.     Ascentcare also claims that Solmetex's DryShield® mouthpieces fit only Dryshield products. This claim is literally false. Solmetex's DryShield® mouthpieces fit on VacuLUX, Isolite, and Dryshield isolation systems.

46.     Solmetex's advertising of its DryShield® mouthpieces expressly states that the mouthpieces fit on competitive systems (https://solmetex.com/product/autoclavable-mouthpiece/). Competitive systems include VacuLUX and Isolite isolation systems.

47.     On information and belief, Ascentcare reviewed Solmetex's advertising for the DryShield® mouthpieces in the course of generating the false and misleading cost comparison discussed above and other comparative advertising. Thus, on information and belief, Ascentcare knows or should know that its claim Solmetex's DryShield® mouthpieces fit only Dryshield products is literally false.

**Ascentcare's False and Misleading Statements Regarding Manufacturing Defects**

48.     In its publication where Ascentcare directly compares the Accused Products with Solmetex's DryShield® mouthpieces (https://www.Ascentcaredental.com/compare/vaculux-vs-dryshield), Ascentcare boasts that the Accused Products provide a "Quiet-Calm Technology" because it is "engineered with large, open-air pathways for quitter procedures."

49.     Ascentcare then claims in this same publication that Solmetex's DryShield® mouthpieces are not quiet because of "Small openings & manufacturing flaws increase[s] [sic] airflow noise."

50.     On information and belief, to the extent that Ascentcare tested Solmetex's DryShield® mouthpieces for noise, such testing did not attribute any additional noise to "manufacturing flaws" within the product.

51.     On information and belief, Ascentcare is aware of and possesses Solmetex's DryShield® mouthpieces that lack the alleged "manufacturing flaws" that are referred to in Ascentcare's publication.

52.     On information and belief, Ascentcare is aware of manufacturing flaws that exist in its own Accused Products.

53.     On information and belief, Ascentcare did not conduct noise testing on its own Accused Products that had manufacturing flaws.

54.     On information and belief, Ascentcare explain the alleged noise in Solmetex's DryShield® mouthpieces as being attributable to "manufacturing flaws" for the purposes of (i) suggesting to potential consumers that all Solmetex's DryShield® mouthpieces had "manufacturing flaws" and/or (ii) disparaging Solmetex's DryShield® mouthpieces in the marketplace.

55.     Ascentcare's comparison of the Accused Products to Solmetex's DryShield® mouthpieces on the basis of alleged airflow noise being attributable to "manufacturing flaws" in Solmetex's DryShield® mouthpieces is literally false and/or purposefully deceptive and misleading.

**Ascentcare's False and Misleading Statements Regarding Performance**

56.     In the publication when Ascentcare directly compares the Accused Products with Solmetex's DryShield® mouthpieces (https://www.Ascentcaredental.com/compare/vaculux-vs-dryshield), Ascentcare includes a section entitled "Why Dentists are choosing VacuLUX over Dryshield."  In this section, Ascentcare claims that dentists are choosing the Accused Products

over Solmetex's DryShield® mouthpieces because the Accused Products are "mouthpieces that won't collapse during suction."   By use of this wording, Ascentcare is suggesting or implying to consumers that Solmetex's DryShield® mouthpieces collapse during suction.

57.     Solmetex's DryShield® mouthpieces are designed to avoid collapsing during suction.

58.     On information and belief, to the extent that Ascentcare tested Solmetex's DryShield® mouthpieces for collapsing under suction, such testing did not lead to quantifiable differences in collapsing between the Accused Products and Solmetex's DryShield® mouthpieces.

59.     Ascentcare's comparison of the Accused Products to Solmetex's DryShield® mouthpieces on the basis of alleged collapsing of Solmetex's DryShield® mouthpieces is literally false and/or purposefully deceptive and misleading.

## COUNT I
### (INFRINGEMENT OF THE '969 PATENT)

60.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.     Ascentcare has directly infringed one or more claims of the '969 Patent, including at least claim 19, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

62.     Ascentcare has indirectly infringed the '969 Patent by actively inducing or contributing to the direct infringement by others of the '969 Patent.

63.     Ascentcare knowingly and actively induces direct infringement by others of the '969 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b). For example, Ascentcare induces infringement of one or more claims of the '969 Patent when

12

dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

64.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

65.    Ascentcare also contributes to infringement by others of the '969 Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '969 Patent.

66.    Ascentcare has had knowledge of the '969 Patent and the manner of Ascentcare's infringement since at least May 17, 2023.

67.    At least as of May 17, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '969 Patent and contribute to the infringement of the '969 Patent.

68.    Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '969 Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

69.    Solmetex has been irreparably harmed by Ascentcare's infringement of the '969 Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## COUNT II
### (INFRINGEMENT OF THE '970 PATENT)

70.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

71.     Ascentcare has directly infringed one or more claims of the '970 Patent, including at least claim 1, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

72.     Ascentcare has indirectly infringed the '970 Patent by actively inducing or contributing to the direct infringement by others of the '970 Patent.

73.     Ascentcare knowingly and actively induces direct infringement by others of the '970 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b). For example, Ascentcare induces infringement of one or more claims of the '970 Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

74.     The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

75.     Ascentcare also contributes to infringement by others of the '970 Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '970 Patent.

76.     Ascentcare has had knowledge of the '970 Patent and the manner of Ascentcare's infringement since at least May 17, 2023.

77.     At least as of May 17, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '970 Patent and contribute to the infringement of the '970 Patent.

78.     Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '970 Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

79.     Solmetex has been irreparably harmed by Ascentcare's infringement of the '970 Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## COUNT III
### (INFRINGEMENT OF THE '686 PATENT)

80.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81.     Ascentcare has directly infringed one or more claims of the '686 Patent, including at least claim 12, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

82.     Ascentcare has indirectly infringed the '686 Patent by actively inducing or contributing to the direct infringement by others of the '686 Patent.

83.     Ascentcare knowingly and actively induces direct infringement by others of the '686 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).

15

For example, Ascentcare induces infringement of one or more claims of the '686 Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

84.     The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

85.     Ascentcare also contributes to infringement by others of the '686 Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '686 Patent.

86.     Ascentcare has had knowledge of the '686 Patent and the manner of Ascentcare's infringement since at least September 6, 2023.

87.     At least as of September 6, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '686 Patent and contribute to the infringement of the '686 Patent.

88.     Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '686 Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

89.     Solmetex has been irreparably harmed by Ascentcare's infringement of the '686 Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## COUNT IV
### (INFRINGEMENT OF THE '217 PATENT)

90.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     Ascentcare has directly infringed one or more claims of the '217 Patent, including at least claim 17, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

92.     Ascentcare has indirectly infringed the '217 Patent by actively inducing or contributing to the direct infringement by others of the '217 Patent.

93.     Ascentcare knowingly and actively induces direct infringement by others of the '217 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b). For example, Ascentcare induces infringement of one or more claims of the '217 Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

94.     The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

95.     Ascentcare also contributes to infringement by others of the '217 Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '217 Patent.

96.     On information and belief, Ascentcare has had knowledge of the '217 Patent and the manner of Ascentcare's infringement since at least November 2023.

97.     On information and belief, at least as of November 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '217 Patent and contribute to the infringement of the '217 Patent.

98.     Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '217 Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

99.     Solmetex has been irreparably harmed by Ascentcare's infringement of the '217 Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

### COUNT V
**(INFRINGEMENT OF THE '329 PATENT)**

100.    Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

101.    Ascentcare has directly infringed one or more claims of the '329 Patent, including at least claim 9, both literally and under the doctrine of equivalents, by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

102.    Ascentcare has indirectly infringed the '329 Patent by actively inducing or contributing to the direct infringement by others of the '329 Patent.

103.    Ascentcare knowingly and actively induces direct infringement by others of the '329 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).

18

For example, Ascentcare induces infringement of one or more claims of the '329 Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

104.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

105.    Ascentcare also contributes to infringement by others of the '329 Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '329 Patent.

106.    On information and belief, Ascentcare has had knowledge of the '329 Patent and the manner of Ascentcare's infringement since at least June 2024.

107.    On information and belief, at least as of June 2024, Ascentcare knew or should have known that its activities induce others to directly infringe the '329 Patent and contribute to the infringement of the '329 Patent.

108.    Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '329 Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

109.    Solmetex has been irreparably harmed by Ascentcare's infringement of the '329 Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## COUNT VI
### (INFRINGEMENT OF THE '438 DESIGN PATENT)

110.    Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

111.    Ascentcare has directly infringed the '438 Design Patent by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

112.    The '438 Design Patent claims a design for a portion of a dental mouthpiece, as depicted in its various figures.  Dashed lines in the '438 Design Patent represent unclaimed elements.  As shown in the exemplary images below, at least one of the Accused Products replicates the claimed elements of the '438 Design Patent.



FIG.3

113.    Considering the nearly identical look of the Accused Products to the design claimed in the '438 Design Patent, the ordinary observer, with knowledge of the relevant prior art, would see the Accused Products mouthpiece and believe it to be the design claimed in the '438 Design Patent.

114.    Ascentcare has indirectly infringed the '438 Design Patent by actively inducing or contributing to the direct infringement by others of the '438 Design Patent.

20

115.    Ascentcare knowingly and actively induces direct infringement by others of '438 Design Patent in violation of 35 U.S.C. § 271(b).  For example, Ascentcare induces infringement of the '438 Design Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

116.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

117.    Ascentcare also contributes to infringement by others of '438 Design Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '438 Design Patent.

118.    Ascentcare has had knowledge of the '438 Design Patent and the manner of Ascentcare's infringement since at least May 17, 2023.

119.    At least as of May 17, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '438 Design Patent and contribute to the infringement the '438 Design Patent.

120.    Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '438 Design Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

121.     Solmetex has been irreparably harmed by Ascentcare's infringement of the '438 Design Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

<u>**COUNT VII**</u>
**(INFRINGEMENT OF THE '439 DESIGN PATENT)**

122.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123.     Ascentcare has directly infringed the '439 Design Patent by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

124.     The '439 Design Patent claims a design for a portion of a dental mouthpiece, as depicted in its various figures.   Dashed lines in the '439 Design Patent represent unclaimed elements.  As shown in the exemplary images below, at least one of the Accused Products (right image) replicates the claimed elements of the '439 Design Patent (left image).



125.    Considering the nearly identical look of the Accused Products to the design claimed in the '439 Design Patent, the ordinary observer, with knowledge of the relevant prior art, would see the Accused Products and believe it to be the design claimed in the '439 Design Patent.

126.    Ascentcare has indirectly infringed the '439 Design Patent by actively inducing or contributing to the direct infringement by others of the '439 Design Patent.

127.    Ascentcare knowingly and actively induces direct infringement by others of '439 Design Patent in violation of 35 U.S.C. § 271(b).  For example, Ascentcare induces infringement of the '439 Design Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

128.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

129.    Ascentcare also contributes to infringement by others of '439 Design Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '439 Design Patent.

130.    Ascentcare has had knowledge of the '439 Design Patent and the manner of Ascentcare's infringement since at least May 17, 2023.

131.    At least as of May 17, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '439 Design Patent and contribute to the infringement the '439 Design Patent.

132.   Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '439 Design Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

133.   Solmetex has been irreparably harmed by Ascentcare's infringement of the '439 Design Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

<u>COUNT VIII</u>
(INFRINGEMENT OF THE '505 DESIGN PATENT)

134.   Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

135.   Ascentcare has directly infringed the '505 Design Patent by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

136.   The '505 Design Patent claims a design for a portion of a dental mouthpiece, as depicted in its various figures.  Dashed lines in the '505 Design Patent represent unclaimed elements.  As shown in the exemplary images below, at least one of the Accused Products (right image) replicates the claimed elements of the '505 Design Patent (left image).



137.    Considering the nearly identical look of the Accused Products to the design claimed in the '505 Design Patent, the ordinary observer, with knowledge of the relevant prior art, would see the Accused Products and believe it to be the design claimed in the '505 Design Patent.

138.    Ascentcare has indirectly infringed the '505 Design Patent by actively inducing or contributing to the direct infringement by others of the '505 Design Patent.

139.    Ascentcare knowingly and actively induces direct infringement by others of '505 Design Patent in violation of 35 U.S.C. § 271(b).  For example, Ascentcare induces infringement of the '505 Design Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

140.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

141.     Ascentcare also contributes to infringement by others of '505 Design Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '505 Design Patent.

142.     Ascentcare has had knowledge of the '505 Design Patent and the manner of Ascentcare's infringement since at least September 6, 2023.

143.     At least as of September 6, 2023, Ascentcare knew or should have known that its activities induce others to directly infringe the '505 Design Patent and contribute to the infringement the '505 Design Patent.

144.     Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '505 Design Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

145.     Solmetex has been irreparably harmed by Ascentcare's infringement of the '505 Design Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## COUNT IX
### (INFRINGEMENT OF THE '436 DESIGN PATENT)

146.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

147.     Ascentcare has directly infringed the '436 Design Patent by making, using, offering for sale, selling within the United States at least one of the Accused Products in violation of 35 U.S.C. § 271(a).

148.    The '436 Design Patent claims a design for a portion of a dental mouthpiece, as depicted in its various figures.  Dashed lines in the '436 Design Patent represent unclaimed elements.  As shown in the exemplary images below, at least one of the Accused Products (right image) replicates the claimed elements of the '436 Design Patent (left image).



149.    Considering the nearly identical look of the Accused Products to the design claimed in the '436 Design Patent, the ordinary observer, with knowledge of the relevant prior art, would see the Accused Products and believe it to be the design claimed in the '436 Design Patent.

150.    Ascentcare has indirectly infringed the '436 Design Patent by actively inducing or contributing to the direct infringement by others of the '436 Design Patent.

151.    Ascentcare knowingly and actively induces direct infringement by others of '436 Design Patent in violation of 35 U.S.C. § 271(b).  For example, Ascentcare induces infringement of the '436 Design Patent when dental clinicians use at least one the Accused Products in isolation systems, including the Solmetex isolation system, in its intended manner.

152.    The affirmative acts of inducement by Ascentcare include, but are not limited to, encouraging and/or facilitating third-party infringement through the creating and publishing promotional and marketing materials, supporting materials, product manuals, and/or technical support and information.

153.    Ascentcare also contributes to infringement by others of '436 Design Patent by selling within the United States at least one of the Accused Products, for which there is no suitable or substantial non-infringing use and which embody a material part of the invention described in the '436 Design Patent.

154.    Solmetex is entitled to recover damages as a result of Ascentcare's infringement of the '436 Design Patent, including Solmetex's lost profits and in no event less than a reasonable royalty, together with interest and costs as fixed by this Court pursuant to 35 U.S.C. § 284, in an amount to be proven at trial.

155.    Solmetex has been irreparably harmed by Ascentcare's infringement of the '436 Design Patent and will continue to be harmed unless and until the issuance of a permanent injunction against Ascentcare.

## <u>COUNT X</u>
### (VIOLATION OF SECTION 43(A) OF THE LANHAM ACT; 15 U.S.C. § 1125(A))

156.    Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

157.    Ascentcare's false and misleading statements constitute false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

158.    Ascentcare has made false, misleading and unsubstantiated statements of fact about the Accused Products and Solmetex's products in its advertisements and marketing materials, as described herein, with the intent to mislead and deceive consumers.

159.     On information and belief, Ascentcare's false and misleading statements of fact have and are continuing to actually deceive or tend to deceive a substantial number of relevant and intended consumers into purchasing Ascentcare's Accused Products instead of Solmetex's DryShield® mouthpiece by misleading consumers into wrongly believing that (i) Ascentcare's Accused Products perform better than Solmetex's DryShield® mouthpiece, (ii) Solmetex's DryShield® mouthpiece only fits DryShield isolation systems, (iii) Solmetex's DryShield® mouthpiece is plagued by manufacturing defects, and (iv) Ascentcare's Accused Products have a per-use cost that is substantially less than the per-use-cycle cost of Solmetex's DryShield® mouthpiece. On information and belief, Ascentcare's false and misleading statements of fact have influenced the buying decisions of consumers throughout the United States and have caused Solmetex to experience a loss of goodwill and injury to its business reputation.

160.     Ascentcare's false and misleading statements of fact were and are made in interstate commerce.

161.     On information belief, Ascentcare will continue to make these false and misleading claims and Solmetex will continue to suffer a loss of consumer confidence, sales, profits, and goodwill, which will irreparably harm Solmetex, unless this Court enjoins Ascentcare from continuing such false and misleading claims and orders their retraction and/or correction.

162.     On information and belief, Ascentcare has profited from its unlawful actions and has been unjustly enriched to the detriment of Solmetex. Ascentcare's unlawful actions have caused Solmetex monetary damage in an amount to be determined at trial.

### COUNT XI
### (VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT; MCL § 445.903 ET. SEQ.)

163.     Solmetex repeats and re-alleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

164.    Ascentcare's advertising and promotional materials, as described herein, contain literally false and misleading statements regarding the nature, characteristics, benefits, uses, or qualities of the Accused Products and Solmetex's DryShield® mouthpiece.

165.    Ascentcare's advertising and promotional materials, as described herein, create a likelihood of confusion, deception, and misunderstanding because Ascentcare's claims lead consumers to wrongly believe, (i) Ascentcare's Accused Products perform better than Solmetex's DryShield® mouthpiece, (ii) Solmetex's DryShield® mouthpiece only fits DryShield isolation systems, (iii) Solmetex's DryShield® mouthpiece is plagued by manufacturing defects, and (iv) Ascentcare's Accused Products have a per-use cost that is substantially less than the per-use cost of Solmetex's DryShield® mouthpiece.

166.    These literally false and misleading advertising and promotional statements are material to consumer purchasing decisions and, on information and belief, have caused and are continuing to cause consumer confusion and damages to Solmetex.

167.    Ascentcare's advertising and promotional statements are in violation of at least MCL §445.903(1) at least because they are disparaging the goods, services, business, or reputation of Solmetex by use of false or misleading representation of fact.

168.    On information belief, Ascentcare will continue to make these false and misleading claims and Solmetex will continue to suffer a loss of consumer confidence, sales, profits, and goodwill, which will irreparably harm Solmetex, unless this Court enjoins Ascentcare from continuing such false and misleading claims and orders their retraction and/or correction.

## **PRAYER FOR RELIEF**

WHEREFORE, Solmetex prays for judgment and seeks the following relief:

a.      That judgment be entered in favor of Plaintiff Solmetex and against Defendant Ascentcare on all causes of action.

b.      That this Court enter judgment that:

(i)      the Solmetex Patents are valid,

(ii)     Defendant Ascentcare has infringed the Solmetex Patents in violation of 35 U.S.C. § 271;

(iii)    awarding Solmetex damages adequate to compensate Solmetex for Ascentcare's past infringement, and any continuing or future infringement through the date such judgment is entered, including prejudgment and post-judgment interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial

(iv)     Defendant Ascentcare's patent infringement was willful, and awarding enhanced damages pursuant to 35 U.S.C. § 284;

c.      That this Court enter an order enjoining Ascentcare, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from infringing the Solmetex Patents;

d.      That this Court enter an order enjoining Ascentcare, its officers, agents, servants, representatives, and employees, and all persons acting in concert with them, and each of them, from making false and/or misleading statements about the Accused Products and Solmetex's DryShield® mouthpiece;

e.      That this Court enter a judgment that this case to be deemed an "exceptional case" under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117, and an award to Solmetex for its attorneys' fees and costs incurred in bringing and prosecuting this action; and

f.    For judgment awarding Solmetex such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Solmetex demands trial of its claims for relief herein before a jury.

Warner Norcross & Judd LLP

*Of Counsel:*                                     /s/ R. Michael Azzi_____
                                                  R. Michael Azzi (P74508)
Daniel J. Burnham (*pro hac vice to be*           WARNER NORCROSS + JUDD LLP
*requested*)                                      150 Ottawa Ave. NW, Suite 1500
Angelo J. Christopher (*pro hac vice to be*       Grand Rapids, MI  49503
*requested*)                                      (616) 752-2000
NIXON PEABODY LLP                                 mazzi@wnj.com
70 West Madison Street, Suite 5200                *Attorneys for Plaintiff*
Chicago, IL 60602-4378
(312) 977-4400


Dated:  September 16, 2024